Good morning, I'm Robert Graham for the Appellants in this matter. As the Court is aware, this entire appeal turns on the question of the scope of immunity available to PHS personnel under 42 U.S.C. Section 233A. More specifically, the question for the Court is what the plain language of the statute provides in that regard. It's the Appellant's position that the only way to give any real meaning to Section 233A of the PHS Act is to read the scope of immunity to extend not only to common law courts but also to Bivens actions. Plain language of the statute makes clear that it is exclusive, exclusive of all liability. That is to say, the FTCA is the exclusive remedy for all liability arising out of performance of medical and related functions by PHS officers and civilian employees. Counsel, though, aren't you overlooking a few things? This statute was passed in 1970 before the Bivens case was decided, wasn't it? It was. And subsequent to that time, there have been all kinds of cases and glosses, Carlson being among the most important, that have defined, if you will, a parallel track. Does the government dispute that? Well, I can't speak for the government. I'm representing... Okay. Well, let's take it for the Appellant directly. For the Appellant directly, we don't dispute that in certain circumstances, in fact, in most circumstances under the FTCA, Bivens claims can proceed parallel to FTCA claims. Isn't 233A designed to cover garden variety, torts, medical claims? I mean, there are many, many statutes. I think I have like 14 that deal with everything from Department of Defense lawyers to people involved in the atomic energy area that refer back to the statute. And yet, they're not protected from Bivens claims, so why should the public health service be any different? Well, I would dispute that the... I'm presuming that the other statutes to which you're referring include the Gonzales Act, for instance, which appears at 10 U.S.C. 1089. It's certainly not clear that Bivens liability is coextensive with or can run parallel to FTCA liability in that circumstance. Well, for example, 10 U.S.C. 1054A deals with legal malpractice by Department of Defense lawyers. Are you suggesting that there's no Bivens Act liability for Department of Defense lawyers on extraordinary matters? I can't speak to that statute because it's not a statute with which I'm familiar. I'm not familiar with the text of what it says. I can't tell you whether it has the same sort of language that... It refers back to 23... I mean, 233A. And... I'm sorry. Excuse me. It does not refer back to that. It refers back to 1346B and 2672 of Title 28, which is the same remedy section that 233A refers to. Again, since I don't have the text of that statute in front of me, I can't speak directly to it. However, the mere fact that incorporates the remedy available under 1346B and 2672 says nothing of the exclusivity of that remedy. By contrast, when you're looking... It says something because the remedy is only... The remedy that's being incorporated is as broad as the remedy is. And if the remedy is, by its own terms, not applicable to some subset of cases, then why isn't that nature of the remedy part of what's being incorporated? Well, I think that that really gets to the nub of the issue here, and I think that that's where the confusion in the district court lies. The fact that a remedy might not be exclusive is not to say that that remedy is not available. And that's precisely the case that we're looking at, for instance, in the Carlson context or in the post-1988 SCCA context. You can have a remedy against the United States and, at the same time, a remedy against an individual employee of the federal government directly, absent some sort of express exclusive language. That is precisely the language that we are looking at in Section 233A. First of all, if 2679, if it's still alone, would definitely apply to these people, right? Because it applies to all employees, and both affirmatively and negatively. Because what actually happened was, essentially, Congress later added, in the Westfall Act, an exclusivity provision for everybody to parallel the one that existed earlier, which was very intricate. For the public health employees. I'm sorry. The intention, as I understand it, from the legislative history to the Westfall Act, is that they want to provide a similar exclusive remedy to what was already available to DOD employees, KHS employees. It applies to any employee of the government, so it applies, I would say, to these same people. It applies to... If I understand what you're asking, what I would suggest is that there are two types of immunity available to KHS employees, depending on the context. They can avail themselves of the protection of 2679B1, or they can avail themselves of the protection of 42 U.S.C. 233A. They're not exactly the same. They are not exactly the same, because one is exclusive with certain qualifications, and the other is exclusive in all instances. How can you read the statute that way, counsel? If you look at 233A, it says, the remedy against the United States provided by Section 1346B and 2672 of Title 28, and skipping the alternative, which doesn't apply here, shall be exclusive of any other action. So, it tells you where the remedy is found. And in this particular case, you go to 1346B, and that refers to Chapter 171, which includes an express exemption in a section of that for Bivens Act claims. Why isn't that the remedy? Well, again, I think it gets back to the question of the availability of the remedy versus the exclusivity of that remedy. But that's sophistry, isn't it? It's not sophistry, precisely because there is an available remedy against the United States, even in certain cases. Well, there is, but as the Supreme Court pointed out in Carlson, there are at least four major differences between a Bivens claim and one against the United States exclusively. One that strikes me as being particularly bizarre, if you follow your line of thinking, is take medical malpractice. I mean, here in California, there's a $250,000 limit on pain and suffering. Other states have a $1.5 billion claim limitation. Others have no limitation at all. Others have some kind of a predicate proceeding that has to follow a filing of such an action. How can that be a substitute for a Bivens claim? It can be a substitute if Congress expressly declares it to be so. Well, and if it's equally effective. The sentence is, when defendants show that Congress has provided an alternative remedy which is explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective. Didn't, in Carlson, the Court make it clear that just the ordinary court claim under the Federal Court Claims Act is not equally effective? Well, again, if you're not dealing – if – the way that the courts have refined that language in Carlson, including this court, is to read it to say, if Congress has expressly declared this remedy to be an exclusive remedy, that is sufficient. You find that in Moore v. Blayman in 1997, I believe. The Court's going to be loathe to question the Congress' judgment as to whether a remedy, an exclusive remedy, is an adequate remedy in a particular circumstance. But where has Congress said that 233A and the remedies provided therein, as you construe it, is a substitute for Bivens? Or is that? Well, as the Court indicated in, I guess it's footnote 5 in Carlson v. Green, you don't need to have that kind of magic language that says explicitly that this remedy shall be an adequate substitute for a constitutional court claim directly against an employee under Bivens. But this is before Bivens, wasn't it? I'm sorry. I'm sure that the time of the statute was passed that weren't doing that because Bivens didn't exist. That's correct. But you do have the Supreme Court in Carlson, which is post-Bivens, obviously, citing the PHS Act as an example where the Congress has expressly provided the FDCA as an exclusive remedy. Well, it obviously is an exclusive remedy for something. The question is for what? In other words, if this is just an observation, which is true, that 233A is exclusive as to some subset of alternatives. But the question is what's the subset? When you look at 233A itself, the text, it's all liability, unlike the other pre-immunity statutes. But that statute was enacted before Bivens was decided. So by no means does it close the field of inquiry, does it? It closes the field of inquiry as to all liability. However Congress changed the law subsequent to that point.  Well, if you're to suggest that there's a statutory cause of action might arise. No, what I'm saying is that the first part of 233A talks about what the remedy is. It cites other sections. Those other sections have been amended in the references therein. I mean, have you ever done any internal revenue code work? You know, there's a code section here and a code section there. Everything refers to this and that and the other. And that's exactly what's happened here. The Congress has provided different things at different times to respond to different circumstances, hasn't it? They have. But what the Congress did in 233A was to make the FTCA, which is to say the judicial remedy available under 1346B and the administrative remedy under 2672, the exclusive remedy in all instances, were the Congress to establish a statutory cause of action for other wrongs under federal law. That would be excluded as well unless there is an exception in that law. But go back to where I was before. If 233A didn't exist, 2679 would apply both affirmatively and in terms of the exclusion to your clients, right? If there were no 233A, correct, yes. Correct, because it applies. Correct. Because it applies to any employee. You said they could pick and choose, and I don't know why that is. But it applies to any employee of the government of which these people are Congress. That's correct. So your burden is to suggest why it would be that when Congress decided to extend the narrow exclusivity of 233A to all employees, including your clients, and it also was decided that that shouldn't apply to a business remedy, that there's any evidence that they had any reason to and did pull out your employees from the definition of an employee and your clients. I mean, to me, it's even simpler than following around the cross-references. It's just standing out of space. They made a decision at this point that for all employees, there's an exclusive remedy and an exception. And why 233 is an exception to that, I don't know. Well, I think that there are two factors that respond to your question. First, when you look at 2679B2, the first clause of the statute says, subparagraph 1 shall not apply to Bivens Actions or other statutory files of action. It says nothing of 233A. It says nothing of the Gonzales Act. It says nothing of what we refer to here as the pre-immunity statute. But 233A says that the remedy is within those sections. And if the Congress has changed the remedy, doesn't that also expand or limit the remedy as provided in those two sections? Well, again, I think it gets back to our disagreement over whether the remedy has changed itself. And it hasn't. There's been no change in the availability of the FTCA remedy, except to the extent that it goes beyond discretionary acts. Because the Court is aware the Westphal Act arose out of the judicially created doctrine of official immunity based on discretionary functions versus ministerial functions. That's effectively what the Westphal Act did. It eliminated that exception to official immunity. Otherwise, the remedy was unaffected. And they stated at the time that it wasn't designed to affect constitutional claims, didn't they, in the legislative history? That's precisely our point, in fact. But the second answer to Judge Berzon's question, which is, it was intended to have no effect on the availability, for good or ill, of constitutional causes of action directly against federal employees. And at that time, business claims were not available against DHS action points. I don't know if I'm clear from Carlson. I'm beginning to run out of government time. I think I've got 22 seconds. No, you're over 22 seconds. Oh, okay. You're in the trap door phase. Wouldn't be the first time. Thank you for your time. Good morning, Your Honors. You're saving two minutes for rebuttals? Yes, basically, if the Court will allow it. Your Honors, may I please record, I'm Jeffrey Clare. I'm Justice Department Counsel for the United States, is amicus in this matter. If I might start with Judge Smith's question, why are doctors different here? In 1970, Congress made a legislative policy determination that the prospect of ruinous malpractice judgments and burdens of having to defend malpractice suits were deterring doctors from coming to work for the federal service and impairing the agency's mission. So in an act of the statute, worded in extraordinarily broad terms, that makes the Federal Tort Claims Act remedy against the United States the exclusive of any other civil action. But counsel, and I hate to interrupt you at this early point, but we don't have a lot of time to talk about this. Let's just stipulate that as far as malpractice is concerned, that 233, not just A, but farther on, is just replete with references to malpractice. I mean, you go back and you find sections 233F, G, I, K, and M, among the ones I found, of 233, that talk about not only how they're going to deal with malpractice, but it gives the Secretary the ability not to hire doctors who have a particularly high rate of malpractice claims. It talks about basically arbitrage, whether it makes more sense for the government to have malpractice insurance versus self-insuring. So I think we can stipulate that insofar as ordinary medical malpractice claims are concerned, there's no question that that section is designed to make it the exclusive remedy. But that's not what we're talking about here. We're talking about whether or not Bivens survives this analysis. I would just like to ask you this. You're familiar with the infamous Tuskegee syphilis tests and studies, are you not? That was carried on by PHS for almost 40 years to determine whether, as it turned out, African-American men would have certain effects. They were just tested whether they were going to die. They didn't give them penicillin and so on. Today, I think it's fair to say that that would have risen well above a constitutional level. Is it the government's position that were the PHS to engage in a Tuskegee syphilis experiment today that there would be no constitutional claim against the PHS because of 233A? It is, Your Honor. Even for the most egregious misconduct such as that, so many of those PHS doctors are acting within the scope of their employment. Congress has said that the remedy for any injuries they inflict is solely against the United States pursuant to the Federal Tort Claims Act and that the language that would exclude even the most egregious of constitutional claims is right in the operative provisions of Section 233A itself. It says with respect to injuries arising out of medical functions performed by public health service doctors, the Federal Tort Claims Act remedy is exclusive of any civil action. What about 233E, which says... Your Honor, that, if I might add, I think illustrates the point that Congress has focused on public health service doctors and enacted a scheme that is particularly applicable to the problems and policy concerns that are presented by public health service employees alone. But that section, which is part of the same section of the code of which the government and the petitioner or the appellant relies, deals with doctors. And it says that assaults and batteries arising out of negligence in performing medical, surgical, dental, or related functions is not covered exclusively. Your Honor, and if I might, what that provision actually does is it makes public health service doctors, makes claims arising out of their treatment for a battery committed by providing medical care without informed consent actionable under the Federal Tort Claims Act, even though if the Federal Tort Claims Act were to be ratified, such claims would be barred by the intact potential... But that leads me to run in the opposite direction for our problem because there is no exception for 2679. In other words, in Congress, in 233, and I understand that there are time factors here in terms of what happened and why it worked, but at the time that the Westfall Act was passed and Congress said, as I read it, for all employees of the government, the remedy, the FCCA remedy is exclusive except not for business actions. If they wanted to create an express exception at the time Carlson talks about to what, 233, they could have done that, but instead one reads this, first of all you have the references, but also you have the fact that it's not on its face, it applies to all federal employees. Let me take the last statement first. Yes, that is true, but for Section 233, the Westfall Act provisions would apply to these employees as well, and the exception for Bivens' claim would apply to Bivens' employees as well, but the salient point here is that Congress did not... I mean, one interesting thing is that it's not written as an exception. It's written, as I am reading it, essentially as an instruction. Paragraph one does not extend or apply to a civil action. It's not that they accept that it doesn't apply. It's simply telling them that it doesn't apply, and in that sense, it seems to me it supports the notion that it doesn't apply in 233A either. That language doesn't mean this is what they're saying. Your Honor, I agree that what it says is that the prior section does not apply, but that's consistent with the legislative history of the Westfall Act, which shows that Congress intended simply to leave the state of the law as it applied the constitutional law towards unchanged. You have those statements... That's correct, but we don't know what the state of the law was. I mean, it wasn't with regard to 233A at that point, because nobody had ever construed it with regard to Bivens' action. Well, Your Honor, there is the plain language of 233A, which extends to any civil action, and certainly that would contemplate an action under the Constitution. Now, I think much has been made here with regard to the fact that Bivens' case postdates the enactment of this statute. This is a 1970 statute. No, Your Honor, in general, what 233A was about was malpractice cases. And one anomaly, in the way that you're reading all this, is that for constitutional violations, if you can't... It's one thing to say that for a malpractice claim, you're going to look at a bunch of different state laws, and people will recover whatever the state law allows. But the consequence of this, as far as who you pursue, is also that if you're... If you have a constitutional violation in New York or in California, you have a completely differential ability to recover something approximating a malpractice. Right? Well, it is true that under the federal court claims that local law does... That's true, and it makes sense towards the parallel state courts, but the courts that aren't parallel state courts, that are constitutional courts, what sense does it make? Well, Your Honor, because Congress was concerned simply with insulating doctors from liability, not with the nature of the cause of action, the sources of law on which the claims were predicated. Can I ask a question about that? Certainly. Did the doctors in fact have any chance of having to pay this? I'm asking... Or any provision under federal law such that if they are held liable that there is a law that pertains to indemnity, but it does not say what Your Honor has stated. There is an indemnification regulation that applies to these doctors. It is 45 CFR Part 36. It provides that in the sole discretion of the Secretary of Health and Human Services,    There is simply... There is authority to indemnify the doctors who are held liable to pay the indemnification. There is authority to indemnify the doctors against such a judgment. But there is no compulsion that they do so. Are the doctors trying to pay their own lawyer? Their legal expenses are reimbursed by the United States. Again, pursuant to discretionary provisions that lead the decision as to whether to afford that indemnification solely to the discretion of the administrative official. I think, Your Honor, it's with respect inappropriate to suggest that this is really an action against the United States because, well, of course, the action the United States is going to take. There is no statute that requires such payment. No, I understand that. But in terms of whether... I mean, it seems to me that with regard to malpractice... What does it refer to malpractice? Is this the same indemnity provision applied? It is the same, yes, ma'am. And again, it is a discretionary determination that the decision as to whether to indemnify lies solely with senior managerial personnel within the pertinent administrative... Well, if you think that Congress is so concerned with seeing the doctors were not... did not have to pay, then the government can certainly carry out the will of Congress. Well, Your Honor, I think first and foremost our task is to apply the statute here as written. And the statute as written says that all such actions, any civil... any action resulting out of such medical injuries are excluded. It draws no distinctions between common law courts and constitutional courts. It is not concerned with the categories of causes of action or the sources of substance of law that underlie the cause of action. I think you were going to make an argument about when Bivens was passed was irrelevant, was it? Well, yes, Your Honor. I think the notion is that because Bivens wasn't established at the time of... Bivens' remedy, somehow Congress couldn't possibly have contemplated excluding constitutional claims. And I think a wider view of the history of the Bivens remedy refutes that notion. First and foremost, cert was granted in Bivens in June of 1970. This statute was enacted in December of 1970. So the question of whether such a damages remedy should be afforded was already before the Supreme Court when the Congress enacted this statute. Secondly, the very opening lines of Bivens made clear that it is deciding this constitutional damages remedy question. It is deciding an issue that was expressly left open by the Supreme Court in Bellevue Hood, a case dating back to 1946. All the substantive law that the Court relies on in Bivens, the Court's power to fashion an appropriate remedy and to look to a damages remedy for claims that were within the federal Court's jurisdiction, relies on a chain of cases long predating this statute, starting with Bellevue Hood in 1946 and stretching all the way back to Marbury v. Mattis. Congress had before it examples of other statutes that provided damages remedies for constitutional violations. Would the government agree that these statutes are not artfully drafted? Well, I always find difficulty in teasing the meaning out of the statute at first reading, and I think that is true here. They are at best ambiguous, are they not? Well, Your Honor, I would not agree that Section 233 is ambiguous with respect to the scope of the exclusivity. Even when you include the remedy section? I was hoping to come to that, the argument, the kind of double incorporation by reference argument, the notion is that Section 233 incorporates by reference the jurisdictional provision of the Federal Court Claims Act, Section 1346B, which, in turn, incorporates by reference Where else do you find a remedy if you don't do that, though? Well, you do find a remedy because Section 233 points at the Federal Court Claims Act and says that is your exclusive provision, and that exclusivity is resolved right in the operative provisions of Section 233 itself. One problem we see in the district court's analysis is that there simply is no language of incorporation by reference. Does there have to be? To support the district court's rationale and the arguments advanced by plan, I think there does have to be. How could the Internal Revenue Code even function without, if you have to have a massive kryptonite? I mean, there's one section all over the place. I mean, this section refers to that section. The other section, you can't even understand it without looking at five or six different sections every time you look. And this is really no different, is it? Well, I think it is different, Your Honor, because the statute is solely about defining the exclusivity of the Federal Tort Claims Act in this particular context. Why the Court should then proceed to look at a provision that the jurisdictional provision of the Federal Tort Claims Act is subject to the provisions of Chapter 171 of Title 28 18 years after the enactment of the statute, Congress added the rest. No, you did nothing jurisdictional. I mean, the statute begins, 233A, remedy provided by Congress, and as you pointed out, Section 1346B is a jurisdictional section. It doesn't even provide a remedy. So the answer to Judge Smith's question of whether it's ambiguous has to be yes. Well, Your Honor, again, we respectfully disagree. Yes, 1346B is in part a jurisdictional provision, but I do agree with the plaintiff's view that  and Section 1348 are a typical statutory shorthand for referring to the Federal Tort Claims Act. I think there's no ambiguity. There's an easier way to refer to the Federal Tort Claims Act than to pick out one paragraph that's a jurisdictional provision and say that the remedy provided by that jurisdictional provision. They could have said by the Federal Tort Claims Act. They could have given any section that provides a remedy. They could have given the code citations for the Act. Certainly, Your Honor, Congress could have referenced the remedy in some other way. But they didn't really do it this way. They did it by referring to a section that doesn't in fact provide a remedy. Your Honor, then I would be hard-pressed to see how the entire statutory scheme could operate in that circumstance. No, you have to say it's ambiguous. You said there's no incorporation by reference. Isn't the only way to make any sense is that there is incorporation by reference. That is that the reference to 1346 had to be a reference to the subjection of provisions of Chapter 171 and essentially to incorporate 171. What else does it mean? The only way you get from the 1346 reference to the only way you have to get, including you, which is to the incorporation of the Federal Tort Claims Act is through subjection of provisions of the Federal   The Federal Tort Claims Act was an existing remedy at the time this statute was enacted. What this statute does is to point at that existing remedy and to say for a particular class of conduct that remedy is exclusive. And what's the difference between that and incorporation by reference? I don't understand it. Because we're dealing here with the scope of the exclusivity provision, not the provisions that provide the remedy that is made exclusive. And the scope of the exclusivity is determined simply by the operative provisions of the face of section 131. What do you understand subject to the provisions of Chapter 171? I mean, I would say that it says all of that. It says subject to the provisions of Chapter 171. Well, Your Honor, subchapter 171 includes a number of things that are obviously unrelated to that, including the provision directing reports to be filed by the Congress. But this one on its face does apply. This one on its face applies. We already raised the answer. It applies to any employee of the federal government. It does not, however, offer the types of things you can recover for under the Federal Tort Claims Act or the circumstances in which you can have a judgment against the federal government. This remedy is exclusive of other remedies. Nothing in 2679 changes what kinds of causes of action you can bring against the federal government, what items of damages you can claim, what circumstances the government will be liable. It simply has no bearing on any of those things. Thank you. You're over. Five minutes over. Thank you. I represent the state of Francisco Castaneda through his sister, Jeanne Castaneda, as the personal representative, as well as his sole heir, Vanessa Castaneda, his 15-year-old daughter. They wanted to be here today, but Vanessa is in Arizona and Jeanne has childcare responsibilities. Thank you for expediting the hearing. I think that everyone here agrees on the issue, that is, whether the district court properly interpreted 42 U.S.C. 233A as permitting plaintiffs to assert Bivens claims because the plain language of that statute following the statutory trail for the FTCA expressly preserves the right to bring Bivens actions. Mr. Doyle, the Carlson case has facts that are somewhat similar to this, but there is a troubling comment in Carlson. I'll just read it briefly. It says, this conclusion, referring to the FTCA compliments Bivens, is buttressed by the significant fact that Congress follows the statute and means to make FTCA an exclusive remedy, then among other statutes it cites 42 U.S.C. section 233A. What implication, if any, does that have on your case? Your Honor, Carlson set forth a two-part test for determining whether or not a statute could provide exclusivity. The first part of that test is an explicit declaration by Congress that there is a substitute remedy. The second part of the test was that that alternative remedy has to be equally effective in the view of Congress. This statement in the Carlson case just recognizes the fact that 233A, as well as a number of other immunity statutes, provide an exclusive remedy for malpractice by government health personnel. That's exactly what the language says, malpractice by certain constitutional claims. And so because the Supreme Court shows its words carefully, just like this Court does in writing opinions, after going through an analysis of the difference between the FPCA and business claims, going through the four-part test that you indicated you talked about earlier, finding specifically that, and I'm going to read this quote out of Carlson, it's on page 23, claiming the FPCA is not a sufficient protector of the citizens' constitutional rights, and without a clear definition of the FPCA. So the Supreme Court in Carlson goes a great length to say it's not in a business context, then says, well, 233A and these other statutes provide that explicit declaration. If they meant to say that it extended to business claims, they certainly would have said so. They didn't. They carefully said it applies to malpractice by government health personnel. So you don't view the Court's comment on page 19 that the section 233A was an example of the kind of explicit statement by Congress that this was intended as a substitute for a Bivens claim? Correct. Any other way other than the language of the opinion itself, any other way that you would distinguish that aspect of Carlson that would help your case? You know, I think that you have to look at kind of timeline, sequence of events of cases, and I think that helps. So, you know, it goes outside the language of Carlson, but if you look at the timeline of events here, we talked about the fact that 233A was enacted in 1970. Bivens didn't come down until June of 1971, six months after 233A, but the other thing that no one has talked about, and I just actually realized it yesterday while I was preparing in the airport, in 1970... You must have had a lot of time to prepare. I did. The Supreme Court itself versus Gamble for the first time recognized an Eighth Amendment violation for providing medical care to prisoners. So, not only did a business claim not exist in 1970, but there was no cause of action  Constitution for a violation of the Eighth Amendment. Estelle versus Gamble set forth the legal test on the merits we have to establish here in this case that, you know, there was deliberate indifference to a serious medical need, but that didn't exist back in 1970. So, there simply is no way that you can read 233A as satisfying the Carlson test. That is simply the second part of the test, which requires Congress to determine that there is an alternative, or that the alternative remedy is equally effective, because, I mean, business didn't exist and neither did the claim that's at issue here today. Admittedly, the Second Circuit cases are not binding on us, but how do you address Cuoco? In a number of different ways. I mean, the most obvious is that Cuoco does not discuss at all the Liability Reform Act of 1988, which effectively amended 233A by expressly preserving a business remedy and clarifying the law that existed prior to 1988, for one. The fact of that case is very different than ours as well. It's a transsexual, male to female transsexual case. You're distinguishing on the basis of which type of constitutional remedy there is or if it rises to a constitutional level, right? You know, I don't think the facts of the issue have that much effect here, but I think that it's sometimes color decisions. But I'm not suggesting that that particular constitutional violation in that case is any different for our purposes here today. Well, didn't the court there find that what happened did not rise to the level of a constitutional  Well, the court came to that conclusion. I mean, the court assumed for the purposes of the case that it was a serious medical need, and I don't... The court may have found that. There was no deliberate indifference. But it pertains to the legal issue that's before us today. A couple other things the court didn't do, which is significant, is it never analyzed the four factors that Carlson set forth, and it never even discussed Carlson at all. It didn't discuss that two-part test where you have to show the second part of the test that Congress determined that this other alternative remedial scheme is equally effective. Counsel, your opponent said that the answer to that is it found in our case, the Moore case. Do you have a response to that? That Moore said that if Congress did the first part and excluded it, that meant it found it equally effective. You know, the Moore case, I haven't read the Moore case. I wrote that down when the counsel cited it, but I'm not familiar with it. I think what, and it was a Ninth Circuit case that you referred to, but it doesn't change, you can't change the Supreme Court's... No, but it would bind us. Well, I don't, I think that the Supreme Court test in Carlson is still the applicable test that the court has to go through to reach the end conclusion here, and that being that there is that requirement to find that it's equally effective. It's all, I mean, it is true, I think, that in the more recent, that if today they passed the same provision as 233A and we didn't have a complication of 2679, you would perhaps assume that they made the determination with regard to a Bivens action, but A, it didn't exist at the time, so it seems a little odd to think that they made the determination as equally effective because they didn't know about it for both reasons that you suggested. So the time sequence is definitive to that matter as well, I think. I have a completely different question, just to be sure I understand what we're doing here today. Is there any issue before us now other than the statutory question? In other words, what about looking at the pleadings to determine whether these individuals, whether they're sufficient to allege what is the statutory standard with regards to each of these individuals? Is anybody contesting that? Is that a problem we need to deal with? Well, I understand that Mr. Hennifer has filed a brief. He was a health services administrator at the San Pedro facility, which was, Mr. Castaneda was detained at two separate facilities. The first one was San Diego correctional facility from March 27th of 2006 to approximately November 23rd of 2006. He was then transferred to San Pedro and was there from November 24th approximately to February 5th, 2007 when he was released. Mr. Hennifer was a health services administrator in that facility. He's the only    been in that facility. I don't think so. I mean, this is an appeal of absolute immunity, denial of absolute immunity. The issue that Mr. Hennifer raised, I believe, is one of qualified immunity, that being whether or not the medical care provided by Mr. Hennifer did not rise to the level of a     rejected by the district court. No, as far as I know, the district court did not raise that level of immunity. For our purposes and following up on what Judge Burzon indicated, normally when something is not raised at the district court level, it can be waived. Was there anything raised at the district court level on behalf of Mr. Hennifer in terms of qualified immunity or for our purposes to the degree we even have any role in considering that, is it waived? It is waived. It was not preserved below him. How can that be fair to him since at the time that this occurred he did not have individual counsel but rather was represented by the United States, if you will, or the ultimate payor in such a situation, were his interests adequately represented by the United States at that point or is it fair to have this issue waived in terms of qualified immunity if you ever get to that since he did not have his own counsel at that point in time. So he did not have his own counsel at that point.  not have  counsel at that point. I don't know if that is true. I don't know if it is true that he did not have his own counsel at that point. One level of allegation that is precluded and another level that is not precluded on your theory of the case. So you have to at least allege enough to make up that increment. I guess the question is whether making up that increment includes demonstrating that he and each of the other individuals had knowledge and was so situated as to how much of each fell standard. So that is what is really bothering me. There is something more we would need to decide other than have a statute that the action does potentially survive but we have to demonstrate that it actually survives. This appeal from my point of view is just an absolute appeal and the factual allegations of the complaint are not at issue. However, I will address it. Mr. Henniford received a letter on December 5th of 2006. He was copied on a letter that was sent by Tom who is a member of the ACLU national prison project. He had been corresponding with him for a number of months. The document clearly that he needed a biopsy to rule out cancer. The letter was sent to Henniford as well as a number of other defendants on December 5th. Letters and follow-up phone calls were made to that facility. He is the head administrative official for the facility. This is all in the record. Mr. Jallis has filed a declaration with exhibits. Two or three other times letters were sent to the facility informing them of what was happening. Mr. Jallis' letter will demonstrate that he set forth in detail the fact that he had been diagnosed with cancer and needed a biopsy as soon as possible. He was detained at that facility until February 5th. He was released on January 25th. They sent him to two outside positions. They sent him to someone on December 14th who said he needed a biopsy. They sent him to another position. It was scheduled for February 8th. They released him three days before and the biopsy appointment was canceled by the United States government. So he was never provided this care that was recommended by his outside positions that the government sent him to. Mr. Hannaford was well aware of that. He was in an emergency situation. The complaint states facts sufficient to rise to the level of a constitutional violation. As to Mr. Hannaford, so. Moving on to the district court's opinion in this case, the plaintiff managed the statute, clearly controlled the court's analysis. You both seem to think plain language controls. I'm glad the statute is all that clear to both of you.  on its face, 233 says you have to look at the incorporated provisions. When there's language that says subject to the Department of Interior appropriations act, permitted in the other statute. This is a common statutory construction the courts do. Under their analysis it would be like reading the first three lines but not reading the rest. You have to follow the trail to where it goes. You do that. You do agree that these statutes are poorly drafted and poorly coordinated. I would agree. You probably say that about a lot of formal statutes. Maybe all of them. Perhaps. To the extent that we believe language is plain and unambiguous but even if it's not you have to look at legislative history. Legislative history is equally direct. I will address that briefly. Is there any authority or statement or statute of which you are aware where Congress has indicated clearly as required by Carlson that 233A is the exclusive remedy to take the place of a given action? There is no statute that I'm aware of or that's decided by any party in this  Any case law? There are the cases starting with Quacko, the 2000 Second Circuit case, and Progeny. There are a number of district court cases. Those all follow Quacko in the Second Circuit, right? Right, primarily. Anything in the Ninth Circuit or any of our district courts that provide any authority? No. There are some cases that support our position that talk about a given claim being viable in the context of 233A, although they don't address specifically the issue of medical care. In an employment context, a given claim was determined to be viable against a public health service doctor. I'm running out of time. There's a couple of points I want to make sure I raise in response to some of the arguments raised in the brief. The brief referenced or argued that the district court's reading of 2679 rendered 233A superfluous as a whole. I just want to make sure the court is aware that 233 itself has an independent meaning and basis for existing separate and apart from the federal tort claims act. If you look at 233G, you'll see that there's a mechanism set forth in 233A for deeming someone who's otherwise not a government employee an employee just for the purposes of immunity. It applies to health clinics and administration of smallpox vaccine and health clinics that satisfy a certain standard. These folks are not government employees. They wouldn't be providing protection but for this mechanism by deeming the employee to be an employee of the Public Health Service Act and then references 233A. So the court's analysis does not render 233A superfluous. Congress in 1988 did not render 233A superfluous as a whole by creating this. Would it be fair to say that Congress by failing to state anything to the contrary allowed Viven's actions and the tort ordinary tort claims approach under 233A to proceed on if you will a parallel track. They are separate in some respects but clearly divisible types of actions that pertain in this case to medical personnel. So I             actions. I think it's fair to say that Viven's actions are not in line with Viven's actions. I think the political policy argument from the appellants that this would open the flood gate to litigation against these doctors may be overburdened by litigation is mitigated by the fact that there were no cases that were in the flood gate. So I  that  actions are not in line with Viven's actions. I think that Viven's actions are not in line with    argument from the appellants that     gate to litigation against these doctors may be overburdened by litigation is mitigated by the fact that there were no cases that   the flood gate to litigation against   may be  by litigation is mitigated by the fact that Viven's actions are not in line with argument from the appellants that there is a flood gate that will open. I think that the fact that from 1970 to 1988 there was not a single case that took 30 years to   open was   line  argument from the appellants that there was not a single case that took 30 years to open was not in line with from the appellants that took 30 years        that  30 years to open
judges: Reinhardt, Berzon, Smith